*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1194**

State of Minnesota,
Respondent,

vs.

Michael Nelson Preston,
Appellant.

**Filed March 23, 2015
Affirmed
Bjorkman, Judge**

Hennepin County District Court
File No. 27-CR-13-41912

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Steven P. Russett, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Hudson, Judge; and Reyes, Judge.

## U N P U B L I S H E D   O P I N I O N

**BJORKMAN**, Judge

Appellant challenges his conviction of domestic assault by strangulation, arguing that the district court committed plain error in admitting certain character evidence and

abused its discretion by excluding testimony he sought to elicit as rebuttal character evidence. Appellant also asserts various arguments in a pro se supplemental brief. We affirm.

**FACTS**

In the early morning hours of December 18, 2013, L.J. got into an argument with her boyfriend, appellant Michael Preston. A friend called L.J. while she and Preston were talking, and she answered the phone. Preston demanded that she hang up, which she did. When the friend called again, Preston told L.J. to give him the phone. They fought over the phone, and Preston broke it. L.J. then grabbed another phone. Preston pushed her onto the bed and told her to let go of the phone; she would not. Preston put L.J. in a headlock, with the crook of his arm in the middle of her throat. He applied pressure to her throat for long enough that she was unable to breathe and briefly lost consciousness. Preston apologized but did not let L.J. leave the apartment.

Later that day, while Preston was talking with a friend, L.J. fled the apartment and called 911. She reported that Preston had choked her. Police responded to the apartment and arrested Preston.

The following day, L.J.'s throat was swollen and painful and her voice was hoarse. She went to the hospital, where her neck and eyes were examined. L.J. had pinkish mucous areas on the sclera of both eyes, darkened areas, and a reddened, irritated area on the upper part of her left eye. The treating nurse noted that lack of sleep and some drugs can cause redness and irritation, but that the darkened areas indicate pressure in the small blood vessels of the eyes, which is consistent with strangulation.

2

Preston was subsequently released from jail. L.J. returned to the apartment so he did not "disappear" before he could be charged and taken into custody again. On December 24, respondent State of Minnesota charged Preston with domestic assault by strangulation, and he was returned to jail; the state later added a charge of false imprisonment.

On December 30, Preston called L.J. from jail five times. They repeatedly discussed the fact that the phone calls were being recorded. At one point, L.J. told Preston that a "lady" told her that he "shot a gun and . . . was locked up." When Preston told L.J. he loved her and asked if she was "gonna do the right thing," she responded, "No, you shouldn't of choked me." He did not deny it but said, "I know I shouldn't of did that sh-t man, but c'mon woman." He went on to say that he thought they were reconciled because he had apologized and promised never to do it again, and because L.J. returned after he was released from jail. L.J. explained that she did so only to make sure that he would "pay for" what he did. She said that she would not reconcile with him because he is "abusive," "psychotic," "jealous," "possessive," and "controlling," and because he needs to get psychological help to deal with those issues.

At Preston's jury trial, the state presented L.J.'s testimony, medical testimony about L.J.'s injuries, and Preston's jail phone calls. Preston elicited evidence that L.J. uses crack cocaine and argued that she fabricated the December 18 incident because Preston had smoked crack cocaine with another woman and did not save any for her. The jury acquitted Preston of false imprisonment and found him guilty of domestic assault by

strangulation. Preston filed a pro se motion for a new trial, which the district court denied. The district court sentenced him to 36 months' imprisonment. Preston appeals.

## D E C I S I O N

**I.      The district court did not commit prejudicial plain error by admitting the unredacted jail phone calls between Preston and L.J.**

When, as here, an appellant fails to object to the admission of unredacted audio evidence at trial, we review for plain error. Minn. R. Crim. P. 31.02; Minn. R. Evid. 103(d); *Bernhardt v. State*, 684 N.W.2d 465, 475 (Minn. 2004). In applying the plain-error test, we will reverse only if the district court (1) committed an error; (2) that was plain; (3) that affected the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Montanaro v. State*, 802 N.W.2d 726, 732 (Minn. 2011). An error is prejudicial if the appellant proves that it is reasonably likely that the error "had a significant effect" on the jury's verdict. *Id.* (quotation omitted).

Preston asserts plain error in the failure to redact from the jail phone calls (1) L.J.'s comments describing his general character and (2) her statement that he was in jail because he "shot a gun." He contends the statements are improper character evidence. Evidence regarding a defendant's character generally is inadmissible unless the defendant puts his character at issue. Minn. R. Evid. 404(a)(1). Accordingly, upon a proper objection, a district court generally should redact such references from otherwise admissible evidence. *See State v. Tovar*, 605 N.W.2d 717, 725 (Minn. 2000) (citing *State v. Hjerstrom*, 287 N.W.2d 625, 627 (Minn. 1979); *cf. State v. Pearson*, 775 N.W.2d 155,

4

161-62 (Minn. 2009) (holding that failure to redact defendant's statements about getting a lawyer from police interview was error). But a district court does not necessarily err by failing to redact such references sua sponte, particularly when the evidence in question provides important context or the record indicates that the defendant strategically declined to request redaction. *See Tovar*, 605 N.W.2d at 726 (upholding admission of police statements that defendant was lying as context for defendant's statements and record indicated strategic reasons for not objecting); *State v. Czech*, 343 N.W.2d 854, 856-57 (Minn. 1984) (holding that it was not error to fail to redact the defendant's references to prior crimes because they provided context as to why the undercover officers were speaking with the defendant).

Our thorough review of the phone calls reveals good reasons for not redacting the statements that Preston now challenges. First, these statements are interspersed with discussion of the strangulation offense and establish a context for that undisputedly admissible evidence. *See Tovar*, 605 N.W.2d at 726 (upholding admission of police statements that defendant was lying as context for defendant's statements). Second, Preston's failure to request redaction appears to have been strategic. Defense counsel used the phone calls as evidence in support of his arguments that L.J. fabricated the strangulation to get back at Preston for smoking all of her crack cocaine with another woman and that she manipulated Preston during the calls to further this fabrication. "Trial counsel cannot have it both ways: failing to raise a specific objection at trial for its own reasons of trial strategy, then claiming the admission of such evidence as error on

appeal." *Id.* On this record, the district court did not plainly err by not sua sponte redacting the statements from the otherwise admissible recordings.

Moreover, Preston has not demonstrated that the challenged statements impaired his substantial rights. Even considered collectively, the statements are a relatively small part of the five phone calls presented to the jury. They also are similar to many statements Preston himself made during the calls, acknowledging his threatening conduct and volatile and aggressive tendencies, to which he does not object. And the evidence against Preston is extensive. Most of the substance of the phone calls is undisputedly admissible, including Preston's numerous statements acknowledging that he choked or strangled L.J. These statements are consistent with L.J.'s testimony about the incident and her attempts to report it, as well as medical evidence of her injuries. On this record, we are not persuaded that the limited character evidence convinced the jury to find Preston guilty of the strangulation charge. Accordingly, we conclude Preston's plain-error challenge to the unredacted phone calls fails.

**II. The district court did not abuse its discretion by excluding testimony Preston sought to elicit about his character.**

We review a district court's evidentiary rulings for an abuse of discretion and harmless error. *State v. Quick*, 659 N.W.2d 701, 713 (Minn. 2003). If a district court excludes evidence but a reasonable jury presented with that evidence "would have reached the same verdict," then the erroneous exclusion of the evidence is harmless beyond a reasonable doubt. *State v. Blom*, 682 N.W.2d 578, 622-23 (Minn. 2004). This

6

standard of review applies even when a defendant claims that an evidentiary ruling impaired his constitutional rights. *Quick*, 659 N.W.2d at 713.

Evidence must be relevant to be admissible. Minn. R. Evid. 402. To be relevant, evidence must have a tendency to make the existence of any fact of consequence to determining the defendant's guilt more or less probable than it would be without the evidence. Minn. R. Evid. 401.

Preston sought to elicit testimony from L.J. that he "had no problem with other men picking [her] up from his apartment." The district court excluded this testimony as irrelevant. Preston contends that the state opened the door to the evidence by presenting L.J.'s recorded statements that he is "jealous" and "controlling." We are not persuaded. "Opening the door occurs when one party by introducing certain material . . . creates in the opponent a right to respond with material that would otherwise have been inadmissible." *State v. Valtierra*, 718 N.W.2d 425, 436 (Minn. 2006) (quotation omitted). But the right to respond is not automatic; it is left to the discretion of the district court and permitted only when fairness requires. *See id.* (stating that opening-the-door doctrine "must be applied cautiously"). Admitting evidence about other men picking L.J. up from Preston's apartment would not have made Preston's trial more fair. The district court did not abuse its discretion by excluding this irrelevant evidence.

Moreover, Preston has not demonstrated any resulting prejudice. Preston had ample opportunity to cross-examine L.J. about the events of December 18, her 911 call and other contacts with police, the jail phone calls, and her possible motive for fabricating the choking incident. And as we noted above, the record contains extensive

evidence of Preston's guilt.  Accordingly, we conclude Preston is not entitled to relief on this basis.

### III.    Preston's pro se arguments lack merit.

Preston argues that he was deprived of a fair trial because his "admission" to choking L.J. during the jail phone calls was coerced.  This argument is unavailing.  There is no reason why L.J., a private actor, could not pressure Preston to make such an admission during a phone call that he knew was recorded.  But there is no indication that she did so.  Preston had ample opportunity during the calls to refute L.J.'s assertion, but instead he made numerous statements acknowledging and apologizing for his conduct, and he repeatedly called L.J. back to continue the conversation.

Preston next challenges L.J.'s unsolicited testimony that he choked her.  Our review of the record confirms that L.J. repeatedly offered testimony—often about the choking incident—when there was no question before her, and that the district court admonished her to wait for a question.  But we are not persuaded that L.J.'s statements deprived Preston of a fair trial.  They duplicated L.J.'s unchallenged testimony about Preston choking her, and defense counsel used L.J.'s recalcitrance to support Preston's fabrication defense, arguing that L.J. could not be controlled, even in a courtroom.

Preston also argues that L.J. made improper statements defaming his character in the hallway in front of the jury.  The district court made a record of the incident:

> [L.J.] had gone into the hallway after we had recessed for the morning and made statements to other witnesses and to people generally, in a loud and boisterous manner.  And there were jurors present who heard in effect an outburst

8

where she objected to the way she was treated on cross-examination, as I understood it.

Defense counsel expressly declined to seek a mistrial based on the incident. And while Preston did file a pro se motion for a new trial, that motion was based on L.J.'s testimony about his custody status, not her statements in the hallway.

Finally, Preston argues that the district court improperly excluded evidence that he and L.J. were in a significant romantic or sexual relationship, as required to prove domestic assault by strangulation. Preston points to only one line of questioning that the district court prevented—a question defense counsel posed to L.J. about how she earns money to take care of her children. This question bears no apparent relevance to the nature of Preston and L.J.'s relationship.

In sum, we conclude that Preston's pro se arguments do not establish any grounds for relief.

**Affirmed.**