*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1466**

State of Minnesota,
Respondent,

vs.

Quincy J. Jones,
Appellant.

**Filed June 1, 2015
Affirmed
Bjorkman, Judge**

Ramsey County District Court
File No. 62-CR-13-7766

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Michael W. Kunkel, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Bjorkman, Judge; and Rodenberg, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BJORKMAN**, Judge

Appellant challenges his convictions of conspiring to sell cocaine and aiding and abetting the sale of cocaine, arguing that (1) the evidence is insufficient and (2) the

district court plainly erred by failing to redact the recording of his police interview. Appellant repeats concerns about the sufficiency of the evidence in a pro se supplemental brief. We affirm.

## FACTS

In early 2013, members of the St. Paul Police Department and the FBI, acting as part of the Safe Streets Task Force, were investigating a narcotics ring in St. Paul. They focused their investigation on known cocaine dealer Isaiah Henry and sought to identify others in his organization. The task force worked with a confidential reliable informant to conduct controlled purchases of cocaine from Henry and secured a wiretap on Henry's cell phone, which permitted them to record and catalogue all incoming and outgoing calls and text messages. These resources led the task force to suspect that appellant Quincy Jones was Henry's source for cocaine he sold on May 24.

That day, task force officers asked the informant to make a controlled purchase from Henry. The informant arranged to purchase one ounce of cocaine for $1,350, and he and Henry agreed to meet around 7:00 p.m. to make the exchange. At 4:46 that afternoon, Henry called a phone number with a Chicago area code inquiring about obtaining one ounce of powder cocaine for a purchaser; the person on the other end responded that he could sell Henry an ounce for $1,000.

Around 7:00 p.m., Henry arrived at the agreed-upon location; an unidentified male was in the vehicle with Henry. Henry again called the Chicago number. As the phone was ringing, the man in the vehicle with Henry said, "[H]ey bro, you're calling me," and

2

Henry hung up.[1]  The informant arrived shortly thereafter, climbed into Henry's vehicle where he made the exchange, and returned to the task force officers.  Upon weighing the cocaine, the officers discovered that there was "[j]ust short of an ounce," about 26 grams.  At their instruction, the informant called Henry and told him that he had not received a full ounce.

The next day, Henry called the Chicago number again, reporting that the cocaine "only come back as ten grams."  The person on the other end responded, "Man stop playin' boy.  Quit.  Stop. Stop. Stop. . . . Came back ten grams.  Hell no.  Not off no twenty-eight.  That's impossible."

The task force investigated the Chicago number.  A phone company query yielded no subscriber information.  But the task force connected the Chicago number to Jones in two ways.  First, they examined the automated pawn system, which revealed that Jones provided the Chicago number and his Illinois driver's license, with a Chicago address, to Minnesota pawnshops on three occasions in early 2013.  Second, when the wiretap on Henry's phone recorded a conversation in which the person at the Chicago number said he was going to Iowa to purchase some cocaine, the task force tracked the location of the Chicago phone and state police stopped a vehicle at that location; Jones was one of the vehicle's occupants.  The task force noted 87 drug-related phone calls and texts between Henry and Jones's Chicago number between May 15 and June 28.

---

[1] When Henry placed a call, the speaker on his phone would begin recording as soon as he hit send, capturing the sound of the phone ringing and any background conversation.

3

In October, the task force ended the investigation and arrested numerous suspects, including Jones. Task force officers interviewed Jones and confronted him with the recordings of Henry's calls to him on May 24 and 25, as well as other recorded conversations between him and Henry. Jones acknowledged that he may have discussed cocaine with Henry but declared that it was "all talk" and that he had never provided cocaine to Henry.

Jones was charged with second-degree conspiring to sell cocaine and aiding and abetting second-degree sale of cocaine. At trial, the state introduced recordings of Henry's May 24 and 25 completed calls to Jones and a recording of Jones's October interview with task force officers. The jury found Jones guilty of both offenses, and the district court sentenced him to 48 months' imprisonment. Jones appeals.

## DECISION

### I. Sufficient evidence supports Jones's convictions.

When reviewing a sufficiency-of-the-evidence challenge, we carefully examine the record to determine whether the fact-finder could reasonably find the defendant guilty of the charged offense. *State v. Pratt*, 813 N.W.2d 868, 874 (Minn. 2012). When a conviction is based on circumstantial evidence, we use a two-step process. *State v. Silvernail*, 831 N.W.2d 594, 598 (Minn. 2013). We first identify the circumstances proved, assuming that the jury resolved any factual disputes in a manner that is consistent with the jury's verdict. *Id.* at 598-99. Then we independently examine the reasonableness of the inferences the jury could draw from those circumstances. *Id.* at 599. All circumstances proved must be consistent with guilt and inconsistent with any

4

rational hypothesis except that of guilt. *State v. Andersen*, 784 N.W.2d 320, 329 (Minn. 2010).

To prove the conspiracy offense, the state was required to show that Jones and Henry agreed to commit the crime of selling three or more grams of cocaine (to the informant) and that Jones committed an overt act in furtherance of that conspiracy. *See* Minn. Stat. §§ 152.022, subd. 1(1), .096, subd. 1 (2012); *State v. Brown*, 732 N.W.2d 625, 628 (Minn. 2007) (explaining that conspiracy is an agreement to commit a crime and an overt act in furtherance of the conspiracy). To prove the aiding-and-abetting offense, the state was required to show that Jones knew of the sale and intended his presence or actions to further the commission of that crime. *See* Minn. Stat. §§ 152.022, subd. 1(1), 609.05, subd. 1 (2012); *State v. Hawes*, 801 N.W.2d 659, 668 (Minn. 2011). The same operative facts bear on both of these closely related offenses.

The evidence, viewed in the light most favorable to the verdicts, establishes the following circumstances. On May 24, Henry agreed to sell one ounce of cocaine to the informant. Henry then contacted Jones and asked to purchase an ounce of cocaine for resale to a known purchaser. Jones indicated that he would be able to provide the requested quantity for $1,000. Later that day, Jones was present in the vehicle with Henry when Henry sold nearly an ounce of cocaine to the informant.[2] The following day, after hearing from the informant that the cocaine weighed less than the agreed-upon

---

[2] In a pro se supplemental brief, Jones challenges this interpretation of the recorded phone call made at the time of the controlled purchase. He also disputes the evidence connecting him to a cocaine purchase in Iowa. Because we view the evidence in the light most favorable to the verdicts, *Silvernail*, 831 N.W.2d at 599, neither argument is availing. We conclude that Jones is not entitled to relief based on his pro se brief.

5

ounce, Henry called Jones to tell him of the shortfall. Jones expressed doubt that the weight could have been off by that much but did not otherwise express surprise at the call.

Jones concedes that these circumstances are consistent with guilt but asserts that they are equally consistent with the alternative hypothesis that he merely discussed cocaine with Henry and never actually provided any to him. Such a hypothesis is not rational. While it is possible that Henry could have obtained the ounce of cocaine Jones agreed to provide from another source, it is implausible that Jones would have been present for the sale if the cocaine came from another source. And if Henry had obtained the cocaine from another source, it is implausible that he would contact Jones about the apparent shortfall and that Jones would have responded as he did. Overall, we conclude the record supports only one rational hypothesis—that of guilt. Accordingly, sufficient evidence sustains Jones's convictions.

## II. The district court did not commit plain error by failing to redact sua sponte the recording of Jones's police interview.

Even relevant evidence must be excluded if its probative value is substantially outweighed by the danger of unfair prejudice to the defendant. Minn. R. Evid. 403. But it is incumbent upon the defendant to request the redaction of immaterial, irrelevant, or unfairly prejudicial material from otherwise admissible evidence. *See State v. Tovar*, 605 N.W.2d 717, 725-26 (Minn. 2000). "[A]ssuming a proper objection, immaterial and irrelevant portions of an extrajudicial interrogation of a defendant should generally not be received in evidence." *State v. Hjerstrom*, 287 N.W.2d 625, 627 (Minn. 1979).

Where, as here, an appellant fails to object to the admission of unredacted audio evidence at trial, we review for plain error. *See* Minn. R. Crim. P. 31.02; *Bernhardt v. State*, 684 N.W.2d 465, 475 (Minn. 2004). In applying the plain-error test, we will reverse only if the district court (1) committed an error; (2) that was plain; (3) that affected the defendant's substantial rights; and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Montanaro v. State*, 802 N.W.2d 726, 732 (Minn. 2011). An error is prejudicial if the appellant proves that it is reasonably likely that the error had a significant effect on the jury's verdict. *Id.*

Jones claims plain error in the district court's failure to redact the recording of his interview with task force officers to exclude excerpts of phone conversations that were not separately introduced at trial. He contends that the conversations, which vaguely reference controlled substances, are irrelevant and unfairly prejudicial. We are not persuaded. One of the critical steps in the state's case was to establish the connection between Jones and the Chicago number, and it used the interview as a whole to do so. The state presented ample evidence that all of the recordings used during the interview were conversations between Henry and the Chicago number recorded through the wiretap on Henry's phone. The officers repeatedly asked Jones whether he was the person in the recordings. And Jones essentially acknowledged that he was. Jones's admission that he was Henry's contact at the Chicago number is highly relevant evidence.

Further, Jones's failure to request redaction appears to have been strategic. Defense counsel questioned one of the task force officers about the failure to identify the time or date of any of the recordings they discussed during the interrogation. And during

closing argument, defense counsel asserted that the task force officers deliberately omitted this information in an attempt to confuse Jones and urged the jury to disregard Jones's statements acknowledging a connection to the Chicago number as merely the result of confusion and pressure. The supreme court has warned that "counsel cannot have it both ways: failing to raise a specific objection at trial for its own reasons of trial strategy, then claiming the admission of such evidence as error on appeal." *Tovar*, 605 N.W.2d at 726.

Finally, Jones has not demonstrated any impact on his substantial rights. The challenged portions of the interview are brief. They played only a very small role in the interview and no role whatsoever in the prosecutor's closing argument. Instead, the prosecutor focused on the two phone conversations between Henry and the Chicago number on May 24 and 25, the erroneous call to the Chicago number on May 24 that placed its owner in Henry's vehicle at the time of the cocaine sale, and the extensive evidence linking Jones to the Chicago number. Nothing in this record reasonably suggests that the failure to exclude the other conversations affected the jury's verdicts. Accordingly, we conclude that Jones is not entitled to relief on this basis.

**Affirmed.**