*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2093**

State of Minnesota,
Respondent,

vs.

Scott Joseph Arnes,
Appellant.

**Filed January 30, 2017
Affirmed
Ross, Judge**

Hennepin County District Court
File No. 27-CR-14-35982

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant
Hennepin County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Roy G. Spurbeck, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Schellhas, Presiding Judge; Cleary, Chief Judge; and

Ross, Judge.

## UNPUBLISHED OPINION

**ROSS**, Judge

        After Scott Arnes fought with B.L.S. in a restaurant parking lot, B.L.S. said he saw

Arnes walking around B.L.S.'s Mercedes Benz. Police arrived and found numerous recent

scratches on B.L.S.'s car, which led to charges and a jury finding that Arnes committed first-degree damage to property. Arnes argues on appeal that the district court's admission of allegedly vouching testimony requires us to reverse his conviction. Because the district court did not plainly err by failing to sua sponte strike the testimony or give a curative instruction, we affirm.

**FACTS**

After the state charged Arnes with felony first-degree damage to property, a jury heard the following account.

Late one night in May 2014, B.L.S. went to the Red Rooster restaurant in Long Lake to speak with his daughter, an employee. Arnes and a bartender found B.L.S. and his daughter outside and interrupted their conversation. Arnes became violent and hit B.L.S. and walked away. Moments later, B.L.S. saw Arnes walking around B.L.S.'s Mercedes Benz, and he told Arnes to get away.

The jury heard recordings of 9-1-1 calls, which suggested a different version. Arnes reported to the emergency dispatcher that he had just been assaulted by a "psychopath" who "drug [his daughter] out [of the restaurant] like he was about to assault her." Arnes said, "[B.L.S.] definitely beat the crap out of me" and "just . . . started punching at me."

The jury learned that officers arrived shortly after Arnes's call. Officer William Mathews spoke with Arnes first. Officer Mathews noticed that Arnes had several injuries. The officer noticed that Arnes smelled like an alcoholic beverage and seemed drunk. While Officer Mathews took Arnes's statement, Officer Todd Peterson took B.L.S.'s statement. He noticed fresh scratch marks "consistent with being keyed or something similar" on

2

B.L.S.'s car's trunk, hood, and sides. He also saw a red substance partially smeared on the hood. Officer Peterson told Officer Mathews what he saw, and Mathews in turn asked Arnes about the damage. Arnes denied being anywhere near the car except immediately after his row with B.L.S. when, according to him, he went near only to photograph B.L.S.'s license plate. Officer Mathews examined Arnes's car keys and found no paint residue. A crime scene investigator arrived and collected evidence, including a sample of the red substance on the car and fingerprints. Police arrested Arnes.

The following exchange took place when the prosecutor directly examined Officer Peterson:

> Q: [D]id you ask [Arnes] at all about the scratches on the car?
> A: Yes, I did.
>
> Q: And what was his response?
> A: He denied any involvement. He did say that the altercation was on the driver's side, but he said he was never near the hood of the car.
>
> Q: Did you have a chance to look at [Arnes] up close at all that night?
> A: Very briefly . . . [W]hen I spoke to him he was quite upset, and I did tell him I didn't believe him.
>
> Q: What, if anything, did you notice about his demeanor that night?
> A: He was kind of ranting that . . . that he was the one that got beaten up, he had nothing to do with it. His speech was slurred. He was quite upset.

The crime scene investigator described a photograph and the red substance depicted in it (which turned out to be blood), saying that it looked "like a transfer pattern where something with blood on it came in contact with the vehicle." The investigator could not

3

say how the blood got on the hood. But DNA tests matched the blood from the car with Arnes's blood.

The jury found Arnes guilty of criminal damage to property exceeding $1,000. The district court sentenced him to 13 months in prison but stayed execution of the sentence for three years conditioned on probationary terms. Arnes appeals.

## D E C I S I O N

Arnes takes issue with this part of the trial exchange that the prosecutor had with Officer Peterson:

> Q. Did you have a chance to look at [Arnes] up close at all that night?
> A. Very briefly . . . [W]hen I spoke to him he was quite upset, and I did tell him I didn't believe him.

Arnes did not object to the exchange during the trial. Nor did he ask the district court to strike the testimony or instruct the jury to treat the testimony in any particular way. But he argues now on appeal that the officer's statement constitutes impermissible vouching testimony and that its admission requires us to reverse his conviction. He is wrong.

Arnes's failure to object at trial constrains our review. We ordinarily review a district court's evidentiary rulings for an abuse of discretion. *State v. Burrell*, 772 N.W.2d 459, 465 (Minn. 2009). But we review unobjected-to error under the plain-error framework. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). On appeal, the defendant must prove that an error occurred, that the error was plain, and that the error affected his substantial rights. *Id.* If he succeeds in meeting each of these elements, we then will

4

consider whether reversal is necessary to ensure the fairness and integrity of the judicial proceedings. *Id.*

### Plain Error

Arnes asserts that the officer's testimony unfairly commented on Arnes's credibility and constitutes plain error. He begins in the wrong place. An error is "plain" if it is clear or obvious, such as when the error contravenes case law, a rule, or a standard of conduct. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). An alleged trial error is not plain error unless it is "so clear . . . and so prejudicial to the defendant's right to a fair trial, that the defendant's failure to object—and thereby present the trial court with an opportunity to avoid prejudice—should not forfeit his right to a remedy." *State v. Manthey*, 711 N.W.2d 498, 504 (Minn. 2006). Arnes argues specifically that Officer Peterson's testimony was plainly impermissible, essentially vouching for the credibility of B.L.S.'s testimony against Arnes. Arnes correctly observes that one witness cannot vouch for the credibility of another witness. *State v. Ferguson*, 581 N.W.2d 824, 835 (Minn. 1998). But this is the wrong place to begin the plain-error analysis.

Our plain-error analysis does not primarily consider the alleged impropriety in the challenged testimony; it primarily considers the alleged impropriety of the district court's response to the allegedly improper testimony. The real question here is not whether permitting the testimony constitutes plain error, but whether the district court's failure to sua sponte strike the testimony or instruct the jury on it was plain error. *See State v. Vick*, 632 N.W.2d 676, 687 (Minn. 2001). Arnes's argument does not point us to the right question, and the answer does not favor him. A district court's failure to sua sponte strike

testimony or instruct the jury about it is generally not reversible error. *Vick*, 632 N.W.2d at 687; *see also State v. Taylor*, 869 N.W.2d 1, 18 (Minn. 2015) (concluding district court did not plainly err in failing to provide sua sponte limiting instruction on prior-felony impeachment). A district court's sua sponte action risks depriving the defendant of the potential strategic advantages of *not* objecting. *See State v. Washington*, 693 N.W.2d 195, 204–05 (Minn. 2005) (disagreeing with proposition that the district court must or should interfere with potential trial strategies by acting sua sponte because it would risk highlighting or enforcing rights the defendant chose to waive); *Manthey*, 711 N.W.2d at 505 (noting that courts are not required or advised to make such affirmative intrusions into proceedings and concluding that plain error did not occur). The solution in these situations might be much worse than the supposed problem.

We add that, although the proper question is whether the district court's failure to act sua sponte was plain error, Arnes would fare no better if we followed the course of his argument that the testimony itself was error. The challenged statement, "I did tell [Arnes] I didn't believe him," was the officer's restatement of what *he told Arnes* at the scene in the midst of his investigation, not his declaration that he in fact did not believe Arnes or his declaration about the truth of someone else's testimony. The state rightly emphasizes *State v. Vance*, 714 N.W.2d 428 (Minn. 2006), *State v. Lindsey*, 632 N.W.2d 652 (Minn. 2001), and *State v. Tovar*, 605 N.W.2d 717 (Minn. 2000). These cases all address the admission of evidence that in one way or another contained investigatory statements that implied that the defendants were lying. *Vance* summarizes for us, "When police interviews with a defendant are admitted, statements by police during the interviews are generally

6

admissible to give context to the defendant's statements." 714 N.W.2d at 443. It does not appear that the challenged testimony was *plainly* vouching testimony.

But we need not decide whether the officer's testimony was vouching testimony because, even if it was, Arnes has not demonstrated that the district court's failure to sua sponte strike or instruct on the testimony was plain error. The alleged vouching testimony was brief and not pursued or otherwise highlighted. It was, at most, a slight so mild that Arnes's counsel might reasonably choose to ignore it so as not to magnify it. The district court, similarly, might have reasonably chosen to ignore it so as not to deprive Arnes's counsel of that reasonable choice. We see no error, let alone plain error, in the district court's choice not to impose an uninvited remedy.

### *Effect on Substantial Rights*

Even if we assume that the officer gave impermissible vouching testimony and that the district court's failure to remedy the impermissible testimony sua sponte was plain error, Arnes clearly fails on the third prong of plain-error analysis. This is because the district court's failure to act sua sponte did not possibly affect Arnes's substantial rights. An error affects substantial rights if there is a reasonable likelihood that it substantially affects the verdict. *State v. Robertson*, 884 N.W.2d 864, 876 (Minn. 2016). Defendants bear the heavy burden of persuasion on this prejudice element. *Griller*, 583 N.W.2d at 741.

Arnes asserts that the state's case was not overwhelming, and he reminds us that, in harmless-error analysis, we consider the strength of the evidence supporting the conviction. Arnes raises a variety of potential weaknesses in the state's case against him: no witness saw him damage the car; police found no paint residue on his keys; "it is counter-intuitive

that [he] would damage the car and then call police"; the crime scene investigator could not say how his blood got on the car; and another employee was also angry with B.L.S. Arnes's ultimate conclusion is that "[i]f the jury was looking for some concrete fact to show that [he] committed the offense, it well might have utilized the experienced officer's opinion that [he] was not truthful."

Arnes's argument that the officer's statement prejudiced his defense fails because the officer stated what was already obvious to the jury. We infer that the jury was already aware that the officer did not believe Arnes's denials about not having been near the car. We need not speculate to understand that, even without hearing the statement, the jury knew that the officer did not believe Arnes's denials; after all, the officers *arrested* Arnes after he spoke with them—an act that must have been preceded by their not believing Arnes's denials. The jury learned nothing from the statement that it did not already know from the circumstances.

The officer's statement was unsolicited, brief, and not highlighted by the prosecutor. It did nothing to bolster the prosecution or prevent Arnes from emphasizing the weaknesses in the state's case against him. And the district court *did* instruct that the jury is the sole judge of credibility, diminishing any negative impact from the challenged testimony.

Arnes's speculation that the jury "might well have" relied on the officer's statement does not constitute a reasonable likelihood that it did. We conclude that there is no way that either the challenged testimony or the district court's failure to sua sponte strike that testimony substantially affected the verdict.

**Affirmed.**

8