STATE of Minnesota, Respondent,

v.

Richard Edward WINTER, Appellant.

No. CX–02–1911.

Court of Appeals of Minnesota.

Sept. 2, 2003.

Mike Hatch, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, and Doug Johnson, Washington County Attorney, Stillwater, for respondent.

John M. Stuart, Minnesota Public Defender, Lawrence W. Pry, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by MINGE, Judge, HARTEN, Judge, and STONEBURNER, Judge.

## OPINION

STONEBURNER, Judge.

Appellant Richard Edward Winter challenges his conviction of second-degree criminal sexual conduct and fourth-degree criminal sexual conduct. Appellant argues that the district court's admission into evidence of a taped police interview without redacting repeated references to polygraph testing constitutes plain error entitling him to a new trial. Because admission of repeated references to polygraph testing is plain error, we reverse and remand for a new trial.

## FACTS

Appellant Richard Edward Winter was charged with second-degree and fourth-degree criminal sexual conduct for the sexual assault of a 14–year–old girl, T.M., for whom he was caring while her mother was out of town. Appellant denied guilt. Appellant did not testify at trial. The state's case depended primarily on the credibility of the victim.

At trial, the district court, without objection, admitted into evidence a tape and transcript of appellant's police interview in which appellant described one incident during which he said he may have acciden-

tally touched the victim when she fell as she came out of the shower while appellant was in the bathroom to urinate. During the interview, the interviewing officer discussed polygraph testing with appellant four times, making numerous references to polygraph testing on each occasion. References to polygraph testing were not redacted from the interview or transcript. The first discussion occurred early in the interview when the interviewing officer asked:

Q. Do you know—do you know what a polygraph test is?

A. Yeah. Something you hook up.

Q. It's a lie detector.

A. They see if you're lying or not.

Q. Right. What would it say if you were hooked up on it right now as to whether—if the question was asked—

A. If I did anything?

Q. Right. If you did anything, if you touched her or anything like that.

A. Nope, never touched her.

Q. Is that what it would say?

A. Well, yeah.

Q. Ever? It would—the question would say have you ever touched her—

A. Inappropriately.

Q. Inappropriately, like have you ever touched her in any of her private parts or anything like that?

A. No. Nope. Nothing.

Q. Nothing like that. Okay, would it say that you were—

A. No, I'm telling the truth. I'm telling the truth right now. Like I said, I'm an honest person—

Later in the interview, after the officer had stopped the tape to call his office, he initiated the following discussion:

Q. Turn that back on. Its 25 after 4:00. What do you think you would do on a lie detector test—

A. You asked me that already.

Q. I know, but you want to let me finish my question buddy?

A. Yep, sure.

Q. All right. I let you finish your answers.

A. Yes you do, man. All right, I just didn't want to go over the same thing again.

Q. If the question was asked of you that you got into the shower with her today, what do you think your answer would be?

A. No.

Q. No, you didn't?

A. No, I didn't?

Q. How do you think the answer would come out on the polygraph?

A. No, I didn't.

The officer raised the issue of a polygraph test again later:

Q. Okay. Now, do you think you'd take that polygraph, Rick, to see if you were telling the truth as to what—

A. I am telling the truth.

Q. Nope. No, now do you think you'd take the polygraph about being truthful about whether your touch was inadvertent or on purpose, 'cause she's saying that her private part was touched.

A. Nope.

Q. She's saying that you touched her in her vaginal area, mm-hmm, and she's also saying that you penetrated her digitally, with your finger.

A. No, never did that.

Q. What do you think a polygraph would say if you were asked those questions now?

A. It would say I'm telling the truth. I did not, I did not penetrate her or put my finger there, or do whatever.

And the fourth exchange is as follows:

Q. Well, your stories are a little bit different, you know what I mean, that your stories are different?

. . . .

Q. You know, that's why it would be interesting for you to take a polygraph for me, to find out who's being truthful, you or her.

A. Well, I don't—why? I never, ever—I never put my hand down there and touched her.

Q. I didn't say that, I said it would be real interesting to—

A. I know. I know what you're saying.

Q. As to who you—if you took a polygraph for me as to who would be—who's story is the truth, you or hers? Don't you think it would be interesting?

A. If I—if I take it to get this done with, yeah. I mean, I can understand if she says, you know, I'm sorry I was miss—misunderstanding of it, 'cause, you know, it happened to her before, you know.

Winter was convicted of second- and fourth-degree criminal sexual conduct. This appeal followed.

### ISSUE

Does the admission of a police interview with appellant that contained multiple references to polygraph testing constitute plain error entitling appellant to a new trial?

### ANALYSIS

■ In general, a defendant is deemed to have forfeited his right to have an alleged error reviewed on appeal if he fails to object to the error at trial. *State v. Quick*, 659 N.W.2d 701, 717 (Minn.2003).

But this court has discretion to review a previously unraised issue if it is plain error. *Id.* The elements of plain error are (1) that there has been error; (2) that this error is plain; and (3) that the error affected substantial rights of the appellant. *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998); *see also* Minn. R.Crim. P. 31.02. Winter argues that the admission of the polygraph-related portions of the interview into evidence constitutes plain error. We agree.

■ Rulings on evidentiary matters rest within the sound discretion of the district court. *State v. Riley*, 568 N.W.2d 518, 527 (Minn.1997). This court will not reverse a district court's evidentiary ruling absent a clear abuse of discretion. *Id.* But it has long been the rule in Minnesota that, with one exception, results of polygraph tests as well as any direct or indirect references to the taking of or refusal to take such a test are inadmissible. *State v. Fenney*, 448 N.W.2d 54, 61 (Minn.1989); *See also State v. Schaeffer*, 457 N.W.2d 194, 197 (Minn.1990) (establishing as exception to rule that defendant has a right to present polygraph information as part of circumstances surrounding a confession).

In *Anderson*, we noted that polygraph tests had been almost universally held to be inadmissible and concluded: "[i]nasmuch as the results of such tests are inadmissible, it must follow that the refusal or willingness of a defendant to take the test is also inadmissible."

*Riley*, 568 N.W.2d at 527 (citing *State v. Anderson*, 261 Minn. 431, 437, 113 N.W.2d 4, 8 (1962)). Even when the parties have stipulated to the admission of polygraph testing evidence, we have held that the district court erred in admitting such evidence. *State v. Litzau*, 377 N.W.2d 53, 55 (Minn.App.1985).

The state argues that admission of the references to the polygraph in this case is not error because the discussion with appellant about the polygraph test did not involve either polygraph test results or evidence that appellant agreed to or refused to take such a test. We disagree. The questioning clearly is a request or strong suggestion that appellant should submit to a polygraph test to establish his innocence. The inference of the questioning is that if appellant is not guilty, he would submit to the test and that failure to submit to the test is evidence of his guilt. We hold that admission of appellant's police interview without redacting all references to polygraph testing constitutes error.

"An error is 'plain' if it was 'clear' or 'obvious.'" *State v. Strommen,* 648 N.W.2d 681, 688 (Minn.2002) (citations omitted).

> [W]e have held that the state cannot "be permitted to deprive a defendant of a fair trial by means of insinuations and innuendoes which plant in the minds of the jury a prejudic[i]al belief in the existence of evidence which is otherwise inadmissible."

*Id.* (citation omitted). Because the references to polygraph testing in this case do not fit within the narrow exception to the court's consistent ban on the introduction of such evidence, we conclude that admission of such references constitutes plain error.

Even if there is plain error, this court will not reverse unless the error affected the defendant's substantial rights. *Griller,* 583 N.W.2d at 740. An appellant's substantial rights have been affected if the error was prejudicial and affected the outcome of the case. *State v. Lindsey,* 654 N.W.2d 718, 724 (Minn.App.2002). Error is prejudicial if there exists a reasonable likelihood that it had a significant effect on the jury's verdict. *Griller,* 583 N.W.2d at 741.

The defendant bears the burden of persuasion on this prong of establishing the right to appellate review of un-objected-to error. *Id.*

In some cases involving admission of polygraph-related testimony, the reviewing court has determined that although admission of the evidence was error, it was not reversible error because a mass of other more concrete physical and testimonial evidence negated any effect of the error on the verdict. *See, e.g., Fenney,* 448 N.W.2d at 61–62 (holding, in homicide case, that although admission of polygraph testimony to lay foundation for opinion testimony is inadmissible, there was no reversible error where state presented evidence of bloody footprints at the crime scene matching defendant's shoes and of blood stains consistent with the victim's blood found on defendant's clothes, as well as other evidence). In this case, however, appellant was convicted primarily on the basis of the victim's testimony and the credibility of appellant's admission during his police interview of an incident in which he may have "accidentally" touched the victim as she came out of the shower. There is a reasonable likelihood that the repeated references to polygraph testing contained in appellant's police interview had a significant effect on the jury's decision. The jury may have concluded that appellant refused to take the test because he was guilty or that he took the test and failed it. We hold that admission of evidence related to polygraph testing in this case affected defendant's substantial rights. And we conclude that the erroneous admission of references to polygraph testing deprived appellant of a fair trial. It is therefore necessary to reverse appellant's conviction and remand for a new trial. *See Quick,* 659 N.W.2d at 717 (stating that when plain error is established, reviewing court may correct the error if

the fairness, integrity, or public reputation of the judicial proceeding is seriously affected).

## DECISION

The district court committed plain error by admitting into evidence a police interview that included numerous references to polygraph testing. The error deprived appellant of a fair trial, making it necessary to reverse appellant's conviction and remand for a new trial to ensure the fairness and integrity of the judicial proceeding.

**Reversed and remanded.**