*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0408**

State of Minnesota,
Respondent,

vs.

Scott Michael Popa,
Appellant.

**Filed July 27, 2015
Affirmed
Rodenberg, Judge**

Anoka County District Court
File No. 02-CR-12-4843

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Anthony C. Palumbo, Anoka County Attorney, Kelsey R. Kelley, Assistant County Attorney, M. Katherine Doty, Assistant County Attorney, Anoka, Minnesota (for respondent)

Eric L. Newmark, Jill A. Brisbois, Newmark Law Office, LLC, Minneapolis, Minnesota (for appellant)

        Considered and decided by Stauber, Presiding Judge; Rodenberg, Judge; and Klaphake, Judge.[*]

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**RODENBERG**, Judge

Appellant appeals from his criminal sexual conduct convictions, arguing that the district court erred by improperly limiting its in camera review of evidence submitted under the procedure provided by *State v. Paradee*, 403 N.W.2d 640 (Minn. 1987), and that the district court erred at trial when it admitted evidence relating to herpes diagnoses of both appellant and the victim.  We affirm.

**FACTS**

Appellant Scott Michael Popa was charged with two counts of first-degree criminal sexual conduct in violation of Minn. Stat. § 609.342, subds. 1(b) and 1(h)(iii) (2010).  Subdivision 1(b) criminalizes sexual conduct between an actor who is 48 months older than the complainant and in a position of authority over the complainant when the complainant is at least 13 years of age but less than 16 years of age.  Subdivision 1(h)(iii) criminalizes sexual conduct between an actor who has a significant relationship to the complainant when the complainant is under 16 years of age and the sexual abuse involved multiple acts committed over an extended period of time.

The victim testified at trial over the course of two days.  Her testimony recounted sexual assaults committed by appellant over a period beginning in late 2005 and continuing through May 2012.  She testified that appellant sexually penetrated her orally, anally, and vaginally on many occasions, and over the course of many years and from when she was nine years old until she was fifteen years old.

2

**In Camera *Paradee* Review**

Appellant moved the court to order discovery of the victim's mental health and social services records.[1] Appellant suggested that there may be exculpatory information in these records because "[the victim was] encouraged to discuss the details of the harm, and the accuracy of her memory" with the mental health and social services professionals. Appellant specifically requested discovery of "[a]ny evidence of the alleged victim's accusations against the Defendant or others of sexual misconduct. Past false allegations of a similar nature to the instant case are relevant and not shielded."

At the motion hearing, appellant argued that the court should "conduct some type of an in camera review of these documents to see if there is, in fact, exculpatory information in them." Appellant argued that the victim had made and later recanted similar abuse allegations in the past, that she had recanted parts of her allegations against appellant, and that she may have claimed other instances of abuse by other people.

The district court stated at the motion hearing that it was "not going to review records to look for exculpatory information. That makes [the court] do[] [counsel's] job." The district court concluded that it would examine the mental health and social services records "for one, evidence of fabrication of similar allegations in the past; or, two, recanting of the allegations in this case. That's all I'll be looking for." Appellant made no objection to or further argument concerning this scope of review by the district court at that time.

---

[1] There were two trials in this case. The first trial ended when appellant had a medical emergency in front of the jury and the district court declared a mistrial. This motion was originally made before the first trial.

The district court issued a written order specifying that it would "conduct an in camera review for the following issues: a. Fabrication by [the victim] for claims of sexual abuse or sexual contact on prior occasions. b. Recantation by [the victim] of the claims of sexual conduct by the Defendant occurring between October 8, 2006 and May 1, 2012." After reviewing the records in camera, the district court issued two identical orders, one addressing the records produced by Anoka County Child Protection, and the other addressing the records produced by Prairie Care, the victim's mental health facility. Both orders conclude that

> The Court has found no documents which contain evidence that in the past [the victim] has fabricated reports of sexual abuse or made comments relative to the incident which is the subject of this proceeding.[2]

Appellant later moved the court to expand its in camera review, arguing that "*Paradee* says that we were to review for anything that could be relevant to the case and not just fabrication or recanting," and expressed concern "that maybe the Court has, in fact, with all due respect, reviewed [these records] under maybe the wrong standard." The district court orally denied this motion stating:

> [T]he party seeking the *Paradee* review needs to show a basis to believe that the records contain something and to identify the records. It is not a fishing trip or a blank check. The Court is always careful on doing *Paradee* reviews to identify what records are required to be disclosed to the Court and what the Court is looking for.

---

[2] The district court's order does not explicitly identify whether the court received the records for evidence of abuse of the victim by persons other than appellant or if it declined to do so because such evidence would not be exculpatory or otherwise relevant.

4

I disagree . . . that the Court should be engaging in finding anything relevant or useful to the defense. That turns the Court into the defense attorney . . .

Your request is denied.

**Herpes Evidence**

At trial, the state introduced evidence that both appellant and the victim carried herpes simplex, virus 2 (HSV-2), also referred to by the parties as herpes and/or genital herpes. Appellant moved the district court in limine to exclude the victim's medical records concerning her herpes diagnosis, arguing that the records lacked foundation. The district court denied appellant's motion. The district court limited its denial by stating that "[s]uch evidence will be admissible, subject to any objection at trial as to foundation or relevance."

At trial, the victim was the first witness to testify. She testified at length about her initial herpes outbreak in 2008, her diagnosis, and her continued struggle with the disease. Appellant did not object to this testimony.

The state later called a records custodian with HealthPartners to lay foundation for the 2008 medical record diagnosing the victim with herpes. The state offered the medical record and appellant objected, arguing that it was cumulative in light of the victim's prior testimony concerning herpes, and "also 403," apparently referring to Minn. R. Evid. 403 (concerning exclusion of relevant evidence that is unfairly prejudicial, confusing, or cumulative). The district court overruled the objection and received the medical record into evidence.

The investigating detective testified that the victim told him that she had carried a herpes diagnoses since 2008, and further testified that medical records verified the victim's assertion. Further, the detective testified that "we also received . . . medical records indicating that [appellant] was seen in March of 2008 at Regions. And he was in there for a wart on his finger, but he also complained that he was having a rash in his genital area." The state asked, "So what did you do with that information?" The detective began to answer but stopped after appellant's hearsay objection was sustained. The detective testified that the investigative team was unable to discover whether appellant also had herpes and that a search warrant was executed in order to obtain a biological sample for testing. The detective did not testify to the result of the herpes test, only that he forwarded the results to the prosecutor.

Finally, the state called the medical lab technician who tested appellant's biological sample for herpes. The laboratory results showing that appellant tested positive for HSV-2 were received without objection.

Appellant called his fiancé, H.K, to testify in his defense. She testified about appellant's herpes diagnosis, and that she knew appellant had herpes. She had never "been aware of any herpes outbreaks," and she was not concerned that she might have the HSV-2 virus, although she had never been tested. H.K. also testified that she knew the victim had herpes.

During closing arguments, both the state and appellant discussed the herpes diagnoses of both appellant and the victim. In its closing, the state argued that the system failed the victim when it failed to make further inquiries about an 11-year-old girl with

6

herpes, but did not advance the specific proposition that the presence of herpes in both appellant and the victim proves sexual penetration. Appellant argued during closing that the evidence of herpes failed to prove that appellant sexually penetrated the victim. Appellant argued that the herpes evidence "raises reasonable doubt. Could it have happened; could it not have happened." Appellant also argued the following:

> One thing I just thought of, too, as I'm standing here. I'm thinking about this testimony – or the evidence about the testing, this herpes testing. We talk about how it's ten times the limit[3] – or the threshold … And how that – I mean, what does that mean? But you don't know because there's nobody that testified about that for sure. Does that mean an old infection, where it could have come from? Could it have come from [others]? We don't know.
>
> If you have questions about that, if you have doubts that creep into your mind about how does that even get here? If you have questions in your mind that creep into your mind about, Does this even add up? That is reasonable doubt.

During deliberations, the jury submitted four questions to the court, as follows:

> (1) Can you provide us with a medical definition of HSV-2?
> (2) How is it contracted?
> (3) Symptoms of HSV-2?
> (4) How contagious?

The district court did not answer the jury's questions, but instead instructed the jury that "you have to decide this case based upon the testimony you have heard and the exhibits you have received. The Court cannot provide answers to the questions you have asked."

The jury returned guilty verdicts on both counts of first-degree criminal sexual conduct. This appeal followed.

---

[3] Appellant tested at 11.70 for HSV-2. Any result over 1.10 is considered positive.

# DECISION

## I.

Appellant first challenges the scope of the district court's in camera review of the victim's records. "Criminal defendants have a broad right to discovery in order to prepare and present a defense." *State v. Hokanson*, 821 N.W.2d 340, 349 (Minn. 2012) (citing *Paradee*, 403 N.W.2d at 642). However, individual mental health and social services records are privileged and generally protected from disclosure. Minn. Stat. § 595.02, subd. 1(g) (2014). In order to balance the privilege-holder's right to privacy with the defendant's right to prepare and present a defense, Minnesota courts require that the district court review privileged documents in camera to determine whether there are documents that are relevant to the defense, if the defendant has first shown that the privileged records plausibly contain material information favorable to the defense. *Hokanson*, 821 N.W.2d at 349 "If a defendant is aware of specific information contained in the file, he is free to request it from the court, and argue in favor of its materiality." *Paradee*, 403 N.W.2d at 641 (quotation omitted). Whether or not the documents disclosed by the district court are sufficient is an issue we review for an abuse of discretion. *Hokanson*, 821 N.W.2d at 349.

The district court here specified that it would examine the privileged records for evidence of (1) fabrication by the victim and (2) recantation of the allegations against appellant by the victim. Appellant argues that, in so limiting its review, the district court erred.

8

Once the defendant makes an initial showing that the specific documents plausibly contain specific exculpatory evidence, the district court is to review privileged documents in camera for "all relevant evidence that might help [the] defense." *Paradee*, 403 N.W.2d at 642. "[District] courts, who by training and experience are qualified for the task of determining matters of relevancy, are capable of determining what if any of the information in the records might help in the defense." *Id.*

In its order denying disclosure, the district court found that "no documents which contain evidence that in the past [the victim] has fabricated reports of sexual abuse *or made comments relative to the incident which is the subject of this proceeding*." (Emphasis added.) The district court's order is broad, suggesting that the district court reviewed the entire record and found no exculpatory evidence. We see no abuse of the district court's discretion in its in camera review of the victim's records.

Additionally, and after our own careful review of the privileged documents, it is clear to us that the district court's decision not to order disclosure any of the victim's medical records was proper. The records contain no exculpatory, discoverable, or admissible information.

## II.

Appellant next challenges the district court's admission of "evidence relating to the herpes test of [the victim] (and all other evidence regarding herpes)." Appellant argues that admitting the test results without testimony from a medical expert explaining the meaning of the tests rendered the evidence more prejudicial than probative under Minn. R. Evid. 403.

While appellant seems on appeal to be challenging the admission of *all* evidence relating to herpes, his objections at trial were limited to the admission of the victim's medical records. Appellant argues on appeal that all evidence that both he and the victim had herpes is unfairly prejudicial because "[t]he evidence presented was so speculative, incomplete, and confusing that no reasonable jury could have known what to make of the evidence and any marginal relevancy was substantially outweighed by the danger of unfair prejudice."

## A. The Victim's Medical Records

We review a district court's decision to admit evidence for a clear abuse of discretion. *State v. Hahn*, 799 N.W.2d 25, 33 (Minn. App. 2011) *review denied* (Minn. Aug. 24, 2011); *see also State v. Winter*, 668 N.W.2d 222, 225 (Minn. App. 2003) ("Rulings on evidentiary matters rest within the sound discretion of the district court."). Generally, relevant evidence is admissible. Minn. R. Evid. 401. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Id.* However, relevant evidence may be excluded if its probative value is outweighed by its potential prejudicial effect. Minn. R. Evid. 403. "Unfair prejudice does not mean the damage to the opponent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *Hahn*, 799 N.W.2d at 33 (quotation omitted).

10

Here, the victim's medical records were relevant. In order to convict appellant of criminal sexual conduct in the first degree, the state had to prove sexual penetration. *See* Minn. Stat. § 609.342, subds. 1(b), 1(h)(iii). Jurors were instructed to use their common sense. The testimony regarding HSV-2 concerned genital rashes, "outbreaks," and appellant's own fiancé testifying that she knew appellant had HSV-2, but she had not been tested herself. HSV-2 is a sexually-transmitted disease. Appellant and the victim presenting with the same sexually-transmitted disease tends to make the fact that appellant sexually penetrated the victim more probable than it would have been without that evidence.

Although appellant also challenged foundation in a pretrial motion, the district court's admission of the victim's medical records is consistent with the business records exception to the hearsay rule. *See* Minn. R. Evid. 803(6). A records custodian from the hospital testified at length about the manner in which the hospital keeps its records and that the victim's medical record was made and kept as a regularly conducted business activity.

Finally, at the point during the trial when the medical record was offered and received, the victim had already testified concerning her herpes diagnoses. Producing medical records confirming testimony already heard by the jury tended only to bolster the victim's credibility, which appellant had attacked on cross-examination. The district court did not err in admitting the victim's hospital records.

11

## B.    Other Evidence Concerning Herpes

Appellant did not object to any other evidence at trial concerning herpes.[4]  "In general, a defendant is deemed to have forfeited his right to have an alleged error reviewed on appeal if he fails to object to the error at trial."  *Winter*, 668 N.W.2d at 225. We may review unobjected-to evidence for plain error.  *Id.*  Admission of evidence is plainly erroneous if (1) there was an error, (2) the error was plain, and (3) "the error affected the substantial rights of the appellant."  *Id.*  An error is plain if it is clear or obvious.  *Id.* at 226.  An appellant's substantial rights have been affected if there is a reasonable likelihood that the erroneously admitted evidence significantly affected the jury's verdict.  *Id.*  "To determine whether the error had a significant effect on the jury's verdict, we review the strength of the State's case, the pervasiveness of the error, and whether the defendant had an opportunity to respond to the testimony."  *State v. Sontoya*, 788 N.W.2d 868, 873 (Minn. 2010).

Evidence regarding the herpes diagnosis pervaded the trial.  Both the state and appellant discussed the herpes diagnoses in opening statements and closing arguments. The victim testified extensively about her diagnosis and her continued struggle with the condition.  The state introduced both the victim's medical records from 2008 diagnosing her with herpes and the testimony of a medical lab technician who performed the lab test

---

[4] The district court sustained appellant's objection to the investigator testifying about what he did with the information concerning appellant "having a rash in his genital area," and sustained appellant's objection to the investigator testifying to the results of testing of applicant's biological sample by a lab technician.  But appellant then interposed no objection to the investigator's testimony that a search warrant was obtained to authorize seizure of a biological sample for testing, or the testimony of the lab technician who tested the sample and concluded that appellant was positive for HSV-2.

confirming that appellant has HSV-2. Appellant himself elicited testimony from his fiancé about his herpes diagnosis and the victim's diagnosis.

Even assuming an error in admitting the herpes evidence was plain (which we do not decide), any such error did not affect appellant's substantial rights. First, the state's case was strong. The victim's testimony, on which the state largely relied, was consistent and detailed. *See State v. Juarez* , 572 N.W.2d 286, 292-93 (Minn. 1997) (explaining that, although the state's case relied heavily on the victim's testimony, the victim's testimony was credible because it was consistent and partially corroborated). She testified in detail over the course of two days. Her testimony was consistent with that of other witnesses. Two of her friends testified that the victim told them that she was being abused in 2011, a year before appellant's arrest. Further, the investigating detective testified that the victim's statements to him were consistent with her trial testimony. The victim's foster mother also testified to the victim's prior consistent statements.

And while H.K. denied ever witnessing or hearing any sexual conduct occurring between appellant and the victim, her testimony confirmed that, on May 1, 2012, the date of the last sexual penetration, appellant was with the victim. H.K. confirmed that appellant and the victim were alone before H.K. arrived home from work. H.K. also confirmed the victim's testimony in other important respects. Finally, appellant had ample opportunity to respond to the evidence concerning herpes, and did so.

Appellant makes much of the fact that the jury asked four questions regarding the herpes virus and disease during deliberations. However, the jury, having been properly instructed concerning the necessity of proof beyond a reasonable doubt in order to

13

convict, returned guilty verdicts. Any confusion that there may have been relating to herpes likely inured to appellant's benefit. The jury was instructed on the prohibition against speculation and on the meaning of reasonable doubt. The jury's questions concerning HSV-2 indicate that it was holding the state to its burden of proof and otherwise following the district court's instructions. And, in response to the questions, the district court properly refrained from adding to the record. The guilty verdicts confirm that, despite its unanswered questions, the jury was convinced of appellant's guilt beyond a reasonable doubt.

**Affirmed.**