*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1757**

State of Minnesota,
Respondent,

vs.

David Eugene Carlson,
Appellant.

**Filed September 8, 2015
Affirmed
Johnson, Judge**

Grant County District Court
File No. 26-CR-12-277

Lori Swanson, Attorney General, Robert A. Plesha, Assistant Attorney General, St. Paul,
Minnesota; and

Justin Anderson, Grant County Attorney, Elbow Lake, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant
Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Bjorkman, Judge; and Kirk,

Judge.

**U N P U B L I S H E D   O P I N I O N**

**JOHNSON**, Judge

A Grant County jury found David Eugene Carlson guilty of first-degree and

second-degree criminal sexual conduct based on evidence that he sexually abused a

young relative who lived with him and his wife. On appeal, Carlson challenges the admission of certain evidence at trial. We conclude that the district court did not plainly err by admitting the evidence and, therefore, affirm.

**FACTS**

V.C. and her sister, D.W., began living with David Carlson and his wife, N.C., in approximately 2003 or 2004, when V.C. was approximately eight years old. Before that time, the two girls had lived in foster care for approximately two years. V.C. is a grandchild of Carlson's brother. V.C. and her sister often called N.C. and Carlson "Mom" and "Dad."

The state's evidence at trial showed a pattern of criminal sexual conduct that spanned a period of approximately six years. In approximately 2008, when V.C. was 11 years old and in fifth grade, Carlson began touching her breasts. During that same year, Carlson penetrated V.C.'s vagina with his finger while they were on the living room couch late one night. In approximately 2010, when V.C. was approximately 13 years old and in seventh grade, Carlson touched and kissed her breasts over her bra.

Carlson usually sexually abused V.C. only when N.C. was away from home. On one occasion, Carlson engaged in sexual contact with V.C. in the presence of another person. In 2011, V.C. and a friend, A.D., were lying on V.C.'s bed, watching T.V. Carlson entered the bedroom and said, "If you two are naked, let me see," or "Are you naked? . . . . Well, you should be." Carlson then approached V.C. and touched her breasts over her clothes. The two girls discussed the incident afterward and decided to not tell N.C. or anyone else.

2

V.C. testified that, in approximately 2009 or 2010, she attempted suicide by swallowing a handful of anti-depressant pills. She became ill but did not receive medical care and did not tell N.C. or Carlson. In 2012, when V.C. was 15 years old, she had breast-reduction surgery. Carlson's abuse stopped for a while but resumed several months after the surgery. At trial, the parties disputed the reasons for the breast-reduction surgery.

In November 2012, V.C. made plans to run away from the Carlson home. She wrote a 10-page letter to N.C., which appears to inform N.C. of Carlson's sexual abuse for the first time. On November 13, V.C. gave the letter to D.W. and asked D.W. to give the letter to N.C. D.W. did so later that day. N.C. read part of the letter but tore it up and threw it away without finishing it. Meanwhile, V.C. messaged her biological mother on Facebook from A.D.'s home and told her that she had left the Carlson home because of Carlson's sexual abuse. V.C.'s biological mother promptly contacted police. A child-protection specialist interviewed V.C. that evening and video-recorded the interview. Deputy Sheriff Jonathan Danner searched Carlson's home pursuant to a warrant. He recovered V.C.'s torn-up letter from a wastebasket and pieced it back together.

The state charged Carlson with two counts of first-degree criminal sexual conduct, in violation of Minn. Stat. § 609.342, subds. 1(a), 1(b) (2012). The case was tried over four days in June 2014. The state called five witnesses: V.C., D.W., N.C., A.D., and Deputy Danner. The state also offered several exhibits into evidence, including V.C.'s letter to N.C. and the video-recording of the child-protection specialist's interview of

3

V.C. During trial, the district court granted the state's motion to amend count 2 of the complaint to allege second-degree criminal sexual conduct.

The jury found Carlson guilty of both charges. The district court sentenced Carlson to 156 months of imprisonment on count 1. Carlson appeals.

## DECISION

Carlson argues that the district court erred by admitting certain evidence offered by the state. Specifically, Carlson challenges the admission of certain parts of V.C.'s 10-page letter to N.C., which was Exhibit 1, and three portions of the testimony of the state's witnesses.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. With some exceptions, "[a]ll relevant evidence is admissible," and "[e]vidence which is not relevant is not admissible." Minn. R. Evid. 402. Furthermore, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Minn. R. Evid. 403. "Unfair prejudice under rule 403 is not merely damaging evidence, even severely damaging evidence; rather, unfair prejudice is evidence that persuades by illegitimate means, giving one party an unfair advantage." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005). This court applies an abuse-of-discretion standard of review to a district court's evidentiary rulings. *State v. Jenkins*, 782 N.W.2d 211, 229 (Minn. 2010).

None of Carlson's arguments were preserved in the district court. His trial counsel did not make any objections to the evidence that he challenges on appeal. Thus, the plain-error test applies. *See* Minn. R. Crim. P. 31.02. Under the plain-error test, an appellant is not entitled to appellate relief on an issue to which no objection was made at trial unless (1) there is an error, (2) the error is plain, and (3) the error affects the appellant's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). If the first three requirements of the plain-error test are satisfied, this court must consider the fourth requirement, whether the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Washington*, 693 N.W.2d 195, 204 (Minn. 2005) (quotation omitted). If this court concludes that any requirement of the plain-error test is not satisfied, it need not consider the other requirements. *State v. Brown*, 815 N.W.2d 609, 620 (Minn. 2012).

## A.    Exhibit 1

We begin with Carlson's argument that the district court plainly erred by admitting V.C.'s 10-page letter to N.C. into evidence in its entirety, without redacting certain portions of the letter. In his brief, he refers to eight statements in the letter that he contends should have been redacted on the grounds that they are lacking in probative value and unduly prejudicial or that they are inadmissible character evidence. A party may ask a district court to redact a portion of a document that otherwise is admissible. *See State v. Hall*, 764 N.W.2d 837, 842-43 (Minn. 2009) (considering argument that district court erred by not redacting portion of statement arising from police interrogation upon defendant's objection). But if a party did not ask the district court to make a

redaction to an exhibit, the question on appeal is whether the district court plainly erred by not *sua sponte* redacting one or more portions of the exhibit despite the fact that the exhibit is generally admissible. *See State v. Vick*, 632 N.W.2d 676, 685 (Minn. 2001) (stating on plain-error review that "the precise question before us is whether the trial court's failure to sua sponte strike the testimony . . . constituted plain error").

Carlson does not cite any cases in which a Minnesota appellate court concluded that a district court plainly erred by not *sua sponte* redacting inadmissible excerpts from an otherwise admissible exhibit. We are able to find only one such case, which concerns an exhibit that contained information that is categorically inadmissible, without any balancing of probative value and unfair prejudice. *See State v. Winter*, 668 N.W.2d 222, 226 (Minn. App. 2003) (concluding that district court plainly erred by not redacting references to polygraph test from recording and transcript of police interview); *cf. State v. Mosley,* 853 N.W.2d 789, 803 (Minn. 2014) ("[a]ssuming without deciding that the State's failure to redact the content of some of Mosley's text messages constituted plain error"); *State v. Pearson*, 775 N.W.2d 155, 161-62 (Minn. 2009) (concluding that district court plainly erred by not editing recording of police interrogation to remove references to request for counsel). We apply *Winter* with caution because imposing a duty on district courts to review all parts of all unobjected-to exhibits to determine whether to redact inadmissible excerpts could be extremely burdensome and might intrude on trial counsel's strategic decisions.[1]

---

[1]Indeed, there is a suggestion in this case that Carlson's trial counsel had strategic reasons for not objecting to the state's introduction of V.C.'s letter into evidence, either

6

It is noteworthy that Carlson's appellate counsel does *not* argue that the district court should have excluded the entire letter. In *State v. Tovar*, 605 N.W.2d 717 (Minn. 2000), the supreme court noted that an appellant should not be allowed to argue on appeal that the district court should have *sua sponte* excluded a part of a recording if trial counsel acquiesced to the admission of the recording for strategic reasons. *Id.* at 726. In this case, Carlson's trial counsel cross-examined V.C. and N.C. about two of the challenged portions of the letter (N.C. about the breast-reduction surgery and V.C. about her suicide attempts) in an attempt to impeach and discredit V.C.'s allegations. Carlson's trial counsel referred to both of those issues in closing argument to challenge V.C.'s credibility. By contrast, the prosecutor only briefly mentioned the breast-reduction surgery in the direct examinations of V.C. and A.D. and did not mention the suicide attempts either during the direct examination of V.C. or in closing argument. In light of the ways in which the parties used the challenged evidence, we are obligated to guard against the possibility that Carlson is, as the supreme court put it in *Tovar*, seeking to "have it both ways." *See id.*

---

in whole or in part. The state contends that the letter "formed an integral part of Appellant's trial strategy." The state asserts that Carlson's trial counsel "extensively used the contents of Exhibit 1 to cross-examine V.C. and attack V.C.'s credibility" and "argued the same facts in his final argument to the jury." The state contends that we should not consider Carlson's appellate arguments because any error would be an invited error. In Minnesota, however, the invited-error doctrine does not preclude an appellate court from considering an appellant's arguments in a criminal case. Rather, an alleged error that was invited must be considered and analyzed under the plain-error test in the same manner as an alleged error to which no objection was made. *State v. Carridine*, 812 N.W.2d 130, 144 (Minn. 2012); *State v. Goelz*, 743 N.W.2d 249, 258 (Minn. 2007).

Our review of Carlson's appellate arguments concerning Exhibit 1 does not lead to the conclusion that the district court plainly erred by admitting V.C.'s 10-page letter to N.C. into evidence without redacting certain portions of the letter. In general, the letter has some probative value because it tends to make the state's allegations more probable, even though the letter does not specifically describe the conduct that is the factual bases of Carlson's convictions. *See* Minn. R. Evid. 401, 402. To the extent that the letter is claimed to be prejudicial, *see* Minn. R. Evid. 403, the prejudice is not as great as Carlson contends. For example, the portions of V.C.'s letter in which she berates herself for not reporting the abuse earlier were unlikely to persuade the jury to convict Carlson. As another example, the statement in the letter that Carlson is "disgusting, horrible, gross, [and] awful" was unlikely to confuse or mislead the jury. None of the challenged excerpts go directly to the elements of proof. Rather, the letter does nothing more than describe V.C.'s state of mind in November 2012, thereby providing indirect support to her testimony about Carlson's alleged conduct. None of the challenged statements in the letter are so unfairly prejudicial that it would have been obvious to the district court that not *sua sponte* redacting portions of the letter would be plain error.

**B.    Testimony**

We next consider Carlson's argument that the district court plainly erred by admitting certain testimony into evidence.

First, Carlson contends that the district court should have *sua sponte* excluded V.C.'s testimony about her breast-reduction surgery. V.C. testified that she had the surgery because she "didn't want people touching [her breasts] or looking at them." This

testimony has some probative value because it tends to make it more probable that Carlson engaged in criminal sexual conduct by touching V.C.'s breasts. The testimony may be prejudicial to some extent but not unduly prejudicial. In addition, the district court gave Carlson considerable leeway in developing contrary evidence about the breast-reduction surgery. Carlson cross-examined N.C. on the subject and effectively elicited evidence that the surgery was medically necessary and that N.C. provided her consent to it for that reason. Thus, the district court did not plainly err by admitting this testimony.

Second, Carlson contends that the district court should have *sua sponte* excluded V.C.'s testimony about her attempts to commit suicide. Carlson contends that this evidence "appealed to the jury's sympathy and passions and, thus, persuaded through illegitimate means." Carlson's argument is flawed because the state did not introduce any such evidence in its direct examination of V.C. Carlson first elicited testimony on this issue by cross-examining V.C. in an attempt to show that the suicide attempts were not genuine. The state then touched on the issue in its re-direct examination of V.C. but only briefly. Carlson's trial counsel suggested to the jury in closing argument that V.C. fabricated the evidence about attempted suicide to make her allegations against Carlson more believable. But the state did not refer to the evidence about suicide attempts in its closing argument. Thus, the district court did not plainly err by allowing the state to ask a few questions on this issue in its re-direct examination of V.C. after Carlson's cross-examination.

Third, Carlson contends that the district court should have *sua sponte* excluded V.C.'s testimony (as well as A.D.'s testimony) that Carlson made a comment about

9

wanting to see V.C. and A.D. naked. He contends that this comment is inadmissible evidence of prior bad acts. *See* Minn. R. Evid. 404(b). In response, the state contends that the evidence is admissible relationship evidence. *See* Minn. Stat. § 634.20 (2012). The district court never had an opportunity to consider either of these provisions of law because Carlson did not object to the testimony. It appears that both provisions apply, which means that the evidence is admissible pursuant to section 634.20. "[T]he rationale for admitting relationship evidence under section 634.20 is to illuminate the relationship between the defendant and the alleged victim and to put the alleged crime in the context of that relationship." *State v. Valentine*, 787 N.W.2d 630, 637 (Minn. App. 2010), *review denied* (Minn. Nov. 16, 2010). The challenged evidence is probative because it concerns the only incident of sexual conduct by Carlson toward V.C. that was observed by another person. Accordingly, Carlson cannot demonstrate that the probative value of this evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *See* Minn. Stat. § 634.20. Thus, the district court did not plainly err by admitting this testimony.

In sum, the district court did not err by not *sua sponte* excluding the state's evidence that Carlson challenges on appeal.

**Affirmed.**